**EXHIBIT 1**

8877 N. Gainey Center Drive - Scottsdale, Ariz. 85258
A Stock Company
(800) 423-7675

THIS IS A CLAIMS MADE POLICY. CLAIM EXPENSES REDUCE THE APPLICABLE PER CLAIM AND
AGGREGATE LIMITS OF LIABILITY. PLEASE READ YOUR ENTIRE POLICY CAREFULLY.

## Wholesaler, Underwriting Manager and Managing General Agent Errors and Omissions Liability Claims Made Policy

Those words or phrases that are bold-faced have special meaning, refer to PART 6.

## RT 1. INFORMATION PAGE

Policy No. ___WH 000023___          Renewal of No. ___WH 000013___

IN RETURN FOR THE PAYMENT OF THE PREMIUM, WE AGREE TO PROVIDE INSURANCE TO
YOU UNDER THE PROVISIONS IN THIS POLICY.

Item 1. First Named Insured and
Mailing Address:
Sovereign General Insurance Services, Inc.
6777 Embarcadero Dr.
Second Floor
Stockton, California  95219

Item 2. Named Insured(s):
See First Named Insured as stated above.

Item 3. Policy Period: Inception Date _August 17, 2000_   Expiration Date _August 17, 2001_
Effective 12:01 A.M., Standard Time at the Mailing Address stated in Item 1.

Item 4. Limit of Insurance:          a. $   5,000,000          Per Claim
                                     b. $   5,000,000          Aggregate

Item 5. Deductible:                     $      10,000          Each Claim
                                            Not Covered

Deductible applies to Damages and Claim Expenses.
Item 6. Premium:                        $   21,606.00
State Surcharge/Tax:                    $   Not Applicable

001

24506

Property/Casualty Division
8877 N. Gainey Center Drive - Scottsdale, Ariz 85258
A Stock Company
(800) 423-7675

Insurance Professionals Errors and Omissions Liability Claims Made Policy

## ᴧRT 1. INFORMATION PAGE (Continued)

First Named Insured:
  Sovereign General Insurance Services, Inc.

Policy No: WH 000023

Item 7. Form(s) and Endorsement(s) made a part of this policy at time of issue:
  Wholesaler, Underwriting Manager & MGA E&O Liability Policy-WH 00 01 (6-97)
  1. California Cancellation & Nonrenewal Change Endorsement - WH 30.01 (1-98)
     Important Information For California Policyholders - SX-73 (4-97)
  ɟ. *Selection, Sub-Agent, Sub Broker & Sub producer · new zs379-97*
  3. *Info Page premium change Endt. - WH 1104 (7-95)*

THIS INFORMATION PAGE, ALONG WITH THE SIGNED **APPLICATION** OR **RENEWAL** APPLICATION AND ALL OF THE PARTS OF THE POLICY LISTED IN ITEM 7. ABOVE COMPLETE THE POLICY.

Countersigned at  Kansas City, Missouri          By  _____
                                                     Authorized Representative

Date  October 17, 2000                           E & O Professionals
                                                 Agency Producer          002

7H-D-1 (7-95)

24506

8877 ...a Gainey Center Drive - Scottsdale, An    85258
A Stock Company
(800) 423-7675

First Named Insured and Mailing Address:

Sovereign General Insurance Services, Inc.
6777 Embarcadero Dr.
Second Floor
Stockton, California  95219

Effective _____ August 17, 2000 _____  12:01 A.M., at Your address as shown on the Information Page, this
Endorsement No. __7__  is part of Policy No. __WH 000023__  We have issued to You.

### CALIFORNIA CANCELLATION & NONRENEWAL CHANGE ENDORSEMENT

You and We agree that PART 7.L. of the policy is changed to read:

L.  Cancellation

1.  The First Named Insured may cancel this policy by mailing or
    delivering to Us or Our authorized representative advance written
    notice of cancellation.
2.  We may cancel this policy by mailing or delivering to the First
    Named Insured and producer of record written notice of cancellation
    at least:
    a.  10 days before the effective date of cancellation if We cancel
        for nonpayment of premium; or
    b.  60 days before the effective date of cancellation if We cancel
        for any other reason.
3.  If this policy has been in effect for more than 60 days, or is a
    renewal of a policy We issued, We may cancel this policy only upon
    the occurrence, after the effective date of the policy, of one or
    more of the following:
    a.  Nonpayment of premium, including payment due on a prior policy
        We issued and due during the current Policy Period covering the
        same risks;
    b.  Discovery of fraud or material misrepresentation by:
        (1) Any of You or Your representative in obtaining this
            insurance; or
        (2) Any of You or Your representative in pursing a Claim under
            this policy;
    c.  A judgment by a court or an administrative tribunal that any of
        You has violated a California or Federal law, having as one of
        its necessary elements an act which materially increases any of
        the risks insured against;

Except as stated above, this endorsement does not change any other provisions of Your policy.

We issued this Endorsement to be part of Your policy on the Inception Date, then the countersignature on the
Information Page also applies to the Endorsement. If this Endorsement is effective after the Inception Date of Your
policy, We or Our Authorized Representative must countersign in the space below to validate the Endorsement.

003

Form:  WH 30 01 (1-98)          Countersigned by _____
Page 1 of 4                                         Authorized Representative

Property/Casualty Division
Gamey Center Businessdale, Arizona 95259

A Stock Company
(800) 423-7675

First Named Insured and Mailing Address:

Sovereign General Insurance Services, Inc.
6777 Embarcadero Dr.
Second Floor
Stockton, California  95219

Effective _____ August 17, 2000 _____ 12:01 A.M., at Your address as shown on the Information Page, this
Endorsement No. ___1___ is part of Policy No. ___WH 000023___ . We have issued to You.

### CALIFORNIA CANCELLATION & NONRENEWAL CHANGE ENDORSEMENT
(Continued)

   d.  Discovery of willful or grossly negligent acts or omissions, or
       any violations of state laws or regulations establishing safety
       standards, by any of You or Your representative, which
       materially increase any of the risks insured against;
   e.  Failure by any of You or Your representative to implement
       reasonable loss control requirements, agreed to by You as a
       condition of policy issuance, or which were conditions precedent
       to Our use of a particular rate or rating plan, if that failure
       materially increases any of the risks insured against;
   f.  A determination by the Commissioner of Insurance that the:
       (1) loss of or changes in Our reinsurance covering all or part
           of the risk would threaten Our financial integrity or
           solvency; or
       (2) continuation of the policy coverage would:
           (a) place Us in violation of California law or the laws of
               the state where We are domiciled; or
           (b) threaten Our solvency; or
   g.  A change by any of You or Your representative in the activities
       or property of the commercial or industrial enterprise, which
       results in a materially added, increased or changed risk, unless
       the added, increased or changed risk is included in the policy.

Notice of cancellation will state the reason and the effective date of
cancellation. The Policy Period will end on that date.

If this policy is cancelled, We will send the First Named Insured any
premium refund due. If We cancel, the refund will be pro rata. If the
First Named Insured cancels, the refund, if any, will be 90% of pro
rata. The cancellation will be effective even if We have not made or
offered a refund.

If notice is mailed, proof of mailing will be sufficient proof of notice.
Except as stated above, this endorsement does not change any other provisions of Your policy.

We issued this Endorsement to be part of Your policy on the Inception Date, then the countersignature on the
Information Page also applies to the Endorsement. If this Endorsement is effective after the Inception Date of Your
policy, We or Our Authorized Representative must countersign in the space below to validate the Endorsement.

Form: WH 30 01 (1-98)                    Countersigned by _____          004
Page 2 of 4                                                   Authorized Representative

First Named Insured and Mailing Address:

Sovereign General Insurance Services, Inc.
6777 Embarcadero Dr.
Second Floor
Stockton, California  95219

Effective _____ August 17, 2000 _____ 12:01 A.M., at Your address as shown on the Information Page, this
Endorsement No. __1__ is part of Policy No. __WH·000023__ We have issued to You.

CALIFORNIA CANCELLATION & NONRENEWAL CHANGE ENDORSEMENT
(Continued)

You and We also agree that PART 7.M. of the policy is changed to read:

M.  Nonrenewal

1.  We may nonrenew this policy by mailing or delivering to the First
    Named Insured and to the producer of record written notice of
    nonrenewal, including the reason for nonrenewal, at least 60 days,
    but not more than 120 days, before the Expiration Date of the policy.

We will mail or deliver Our notice to the First Named Insured and to the
producer of record at the mailing address last known to Us.  Proof of
mailing will be sufficient proof of notice.  However, the offer of
renewal terms, conditions or premium different from those in effect
prior to renewal does not constitute nonrenewal.

2.  We are not required to send notice of nonrenewal in the following
    situations:
    a.  If the transfer or renewal of a policy, without any changes in
        terms, conditions, or rates, is between Us and a member of Our
        insurance group;
    b.  If the policy has been extended for 90 days or less, but only if
        that notice has been given in accordance with the terms provided
        above;
    c.  If the First Named Insured has obtained replacement coverage, or
        if the First Named Insured has agreed, in writing, within 60
        days of the termination of the policy, to obtain that coverage;
    d.  If the policy is for a period of no more than 60 days and the
        First Named Insured is notified at the time of issuance that it
        will not be renewed;
    e.  If the First Named Insured requests a change in the terms or
        conditions or risks covered by the policy within 60 days of the
        end of the Policy Period; or

Except as stated above, this endorsement does not change any other provisions of Your policy.

If We issued this Endorsement to be part of Your policy on the Inception Date, then the countersignature on the
Information Page also applies to the Endorsement.  If this Endorsement is effective after the Inception Date of Your
policy, We or Our Authorized Representative must countersign in the space below to validate the Endorsement.

Form:  WH 30 01 (1-98)           Countersigned by _____        005
Page 3 of 4                                               Authorized Representative

8877 N. Gainey Center Drive - Scottsdale, Ariz   85258
A Stock Company
(800) 423-7675

First Named Insured and Mailing Address:

Sovereign General Insurance Services, Inc.
6777 Embarcadero Dr.
Second Floor
Stockton, California   95219

Effective _____August 17, 2000_____ 12:01 A.M., at Your address as shown on the Information Page, this
Endorsement No. ___1___ is part of Policy No. ___WH 000023___ We have issued to You.

CALIFORNIA CANCELLATION & NONRENEWAL CHANGE ENDORSEMENT
(Continued)

f.   If We have made a written offer to the First Named Insured to
renew the policy under changed terms or conditions or at an
increased premium rate, when the increase exceeds 25%.

Except as stated above, this endorsement does not change any other provisions of Your policy.

We issued this Endorsement to be part of Your policy on the Inception Date, then the countersignature on the
Information Page also applies to the Endorsement. If this Endorsement is effective after the Inception Date of Your
policy, We or Our Authorized Representative must countersign in the space below to validate the Endorsement.

006

Form:  WH 30 01 (1-98)          Countersigned by _____
Page 4 of 4                                          Authorized Representative

# IMPORTANT INFORMATION FOR CALIFORNIA POLICYHOLDERS

In the event you need to contact someone about this policy for any reason, please contact your agent first. If you have additional questions, you may contact the insurance company issuing this policy at the following address and telephone number:

8877 N. Gainey Center Drive
Scottsdale, Arizona  85258
Telephone:  1-800-423-7675

If you have been unable to contact or obtain satisfaction from the company or agent, you may contact the California Insurance Department at:

California Department of Insurance
Consumer Affairs Unit
300 South Spring Street, 9th floor South Tower
Los Angeles, California  90013
Telephone:  1-800-927-4357 or 213-897-8921 (out of state)

When contacting your agent, company or the Insurance Department, please have your policy number available.

Property/Casualty Division
8877 N. Gainey Center Drive - Scottsdale, Arizona 85258
A Stock Company
(800) 423-7675

First Named Insured and Mailing Address:

Sovereign General Insurance Services, Inc.
6777 Embarcadero Dr.
Second Floor
Stockton, California  95219

Effective ___December 21, 2000___ 12:01 A.M., at Your address as shown on the Information Page, this
Endorsement No. __2__ is part of Policy No. __WH 000023__ We have issued to You.

### SOLICITOR, SUB-AGENT, SUB-BROKER, OR SUB-PRODUCER
### CHANGE ENDORSEMENT

You and We agree that PART 4. Introduction, 6. of the policy is changed to
read:

6.   Each person or organization named below but only for Wrongful Acts
     with respect to insurance placed through the facilities of a Named
     Insured:

         Tom Loper

     Insurance will be considered placed through the facilities of a
     Named Insured if:
     (a) the person or organization is accessing insurance markets
         through a Named Insured (by use of an existing agency contract
         or existing brokerage agreement or relationship of a Named
         Insured); or
     (b) part or all of the commission on the transaction giving rise to
         the Claim is payable to a Named Insured.

Except as stated above, this endorsement does not change any other provisions of Your policy.

If issued this Endorsement to be part of Your policy on the Inception Date, then the countersignature on the
Information Page also applies to the Endorsement. If this Endorsement is effective after the Inception Date of Your
policy, We or Our Authorized Representative must countersign in the space below to validate the Endorsement.

·008

Countersigned by _____

8877 N   Gainey Center Drive · Scottsdale, Ariz   85258
A Stock Company
(800) 423-7675

rst Named Insured and Mailing Address:

Sovereign General Insurance Services, Inc.
6777 Embarcadero Dr.
Second Floor
Stockton, California  95219

Effective ____December 21, 2000____ 12:01 A.M., at Your address as shown on the Information Page, this
Endorsement No. ___1___ is part of Policy No. ___WH 000023___ We have issued to You.

INFORMATION PAGE
PREMIUM CHANGE ENDORSEMENT

You and We agree that PART 1., Item 6. of the Information Page, Premium, is
changed to read:

Item 6.   Premium:                       $ 21,983
          State Surcharge/Tax:           $ Not Applicable

PREMIUM CALCULATION

|  |  | Current (a) | Annual (b) |
|---|---|---|---|
| 1. | Policy Premium | $ 21,606 | $ 21,606 |
| 2. | Additional _X_ or Return_ Annual Premium |  | $ + 576 |
| 3. | Total Revised Annual Premium |  | $ 22,758 |
| 4. | Pro Rata Additional _X_ or Return_ Premium for Midterm Endorsement (2b x Pro Rata Factor __.655) | $ + 377 |  |
| 5. | Revised Current Total Policy Premium (1a + 4a) | $ 21,983 |  |

The premium indicated in line 3., column (b) serves as the basis for calculating
additional premium for the Supplemental Extended Reporting Period.

Except as stated above, this endorsement does not change any other provisions of Your policy.

ì issued this Endorsement to be part of Your policy on the Inception Date, then the countersignature on the
ìmation Page also applies to the Endorsement. If this Endorsement is effective after the Inception Date of Your
policy, We or Our Authorized Representative must countersign in the space below to validate the Endorsement.

Form:  WH 10 04 (7-95)            Countersigned by _____          009

Authorized Representative

WH 0000.5

Submitted by Sovereign General Surplus Lines Lic#/DOI# 0A99976
AUG 11 2000
Professional, Inc.

## WHOLESALER, UNDERWRITING MANAGER AND MANAGING GENERAL AGENT ERRORS AND OMISSIONS LIABILITY CLAIMS MADE POLICY APPLICATION

1. First Named Insured (including DBA's): **Sovereign General Insurance Services, Inc**
   Note: First Named Insured is responsible for premium payment, cancellation and changes - refer to specimen policy.

   Mailing address: **6777 Embarcadero Dr.** City: **Stockton** State: **CA** Zip: **95219**

   Street address (if different from mailing address): _____

   Phone: ( **209** ) **644 8100** Fax: ( **209** ) **644 8130**

2. Is Your firm a: **X** Corporation ____ Partnership ____ Sole Proprietorship ____ Other (specify) _____

3. Are there other Named Insureds and/or subsidiaries, affiliates, branch offices or other related entity(ies) (including DBA's) for which coverage is desired? ____ YES **X** NO  If "YES", complete Supplement I, Ownership Affiliations.

   All remaining questions on this application apply to the persons and entities described in questions 1 and 3 above.

4. Date Your firm began operations: **July 1992**

5. a. Is Your firm wholly or partially owned by, affiliated with, associated with, or controlled by any other entity(ies) not previously listed in Question 1 or 3? ____ YES **X** NO

   b. Do any of You wholly or partially own, operate, manage or control any other businesses or entity(ies) not previously listed in Questions 1 or 3? ____ YES **X** NO

   If a. or b. are answered "YES", provide complete details: _____

6. Within the past three years, have any of You changed Your name or ownership structure? ____ YES **X** NO

   If "YES", provide the date of the change and indicate the former name and ownership structure and describe the current ownership structure _____

7. Within the past five years, have any of You:
   a. Purchased or acquired another entity or book of business? ____ YES **X** NO  If a. or b. are answered "YES", complete
   b. Merged or consolidated operations with another entity? ____ YES **X** NO  Supplement II, Acquisition/Merger Supplement

8. Are there any individuals compensated by any of You who place business through Your insurance markets who do not have F.I.C.A. taxes deducted from their compensation? ____ YES **X** NO

   If coverage is desired, complete Supplement III Solicitor/Independent Contractor Supplement.

   Note: These individuals are considered independent contractors and are not covered under the basic policy. However, they can be added by endorsement for an additional premium, but only as respects insurance placed through any of Your facilities.

9. a. Provide the number of producers appointed as sub-agents or sub-producers by any of You: **400 - 150 active**
   b. Do all of You require that all sub-agents carry Professional Liability Insurance? **X** YES ____ NO
   c. Do all of You require that all sub-agents or sub-producers execute a contract? **X** YES ____ NO
   d. Please provide a copy of the standard contract entered into with all sub-agents or sub-producers.

10. Limit of Liability and Deductible desired: Limit of Liability Per Claim:$ **$5,000,000** / Aggregate: $ **$5,000,000**
    Deductible: $ **10,000**

11. Policy Period desired: From: **08/17/00** To: **08/17/01**

RECEIVED
AUG 1 1 2000
E. & O. PROF.
010

W&S - APP (9-97)          © 1996 E & O Professionals

12. a. For all business placed by any of You as an agent, broker or wholesaler list the complete name of the largest property and casualty companies represented by any of You. The companies listed must account for at least 85% of total annual property and casualty premium volume from agent or broker activities. (Do not include any information related to insurers for which any of You are a Managing General Agent or Underwriting Manager.)

| Complete Company Name | Years Represented | Historical Loss Ratio | | Annual Premium Volume |
|---|---|---|---|---|
| Lloyds | 7 | 16 | % | $ 2,000,000 |
| Lloyds | 7 | 44 | % | $ 6,000,000 |
| Scottsdale | 6 | 19.6 | % | $ 4,300,000 |
| CNA | 1 | 12 | % | $ 1,700,000 |
| Western Heritage | 2 | 0 | % | $ 200,000 |
| Essex | 4 | 0 | % | $ 50,000 |
| | | TOTAL (must account for at least 85%) | | $ 14,250,000 |

b. List names of all other property and casualty companies represented by any of You as an agent, broker or wholesaler.

Sutter Insurance

c. Within the past five years, have any of You placed any business with any insurer or captive that was or is domiciled outside of the United States?  __x__ YES _____ NO
If "YES", provide the name of the insurer or captive, lines of insurance placed, and current premium volume:____

Lloyds ( AON)  $ 6,000,000  Auto phys dam & Motor Truck Cargo: Lloyds ( Corrie & Partners) $ 2,000,000

13. List the complete name of the largest life, accident and health companies represented by any of You. (Do not include any information relate to insurers for which any of You are a Managing General Agent or Underwriting Manager.) The companies listed must account for at least 85% of total annual Life/A&H commission income. (Use attachment if additional space is needed.)

| Complete Company Name | Years Represented | Annual Commission Income |
|---|---|---|
| none | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | TOTAL (must account for at least 85%) | $ |

14. a. Provide the following information for all business any of You place direct with non-admitted insurers:

| Insurer Name | Is Insurer on State Regulatory Authority Approved List of Non-admitted Insurers? | | Annual Premium Volum With This Insurer |
|---|---|---|---|
| Lloyds | _x_ YES ___ NO | | $ 12,000,000 |
| Western Heritage | _x_ YES ___ NO | | $ 250,000 |
| Scottsdale Insurance | _x_ YES ___ NO | | $ 1,000,000 |
| Essex Insurance | _x_ YES ___ NO | | $ 50,000 |
| | ___ YES ___ NO | | $ |
| | ___ YES ___ NO | TOTAL | $ |

Provide the annual premium volume of all other non-admitted business placed by any of You through other brokers, MGA's, wholesalers or other agencies.  $ __n/a__

© 1995 S 1 O Professionals

Page 011

c.   Describe the procedures You use to notify clients of the implications and possible consequences of placing coverage with a non-admitted insurer.   The insured must sign and return to us a D-1 form, and a D-2 form is attached to every policy issued

15.   Supplement IV, Business Profile Supplement, must be completed.

16.   If You place any business as a Managing General Agent or Underwriting Manager, Supplement V, Managing General Agent/Underwriting Manager Supplement, must be completed.

17.   Within the past five years, have any of You directly or indirectly placed any business in any insurance company or any other risk-assuming entity (i.e., any trust, pool, risk retention group, etc.) that ceased operations or was declared insolvent, put into receivership, bankruptcy, liquidation or rehabilitation, or has been financially unable, or is unwilling to meet all or part of any legal or financial obligation?
_____ YES __x__ NO

If "YES", provide the name of the company or risk-assuming entity, year insolvency occurred, premium volume at time of insolvency and describe action taken by You to replace this book of business and whether or not there are any pending claims: _____

18.   Provide a breakdown of the percentage of total annual income derived by any of You from the following activities:

| | |
|---|---|
| Actuarial Services for a fee | _____ % |
| Insurance Commissions | _100_ % |
| Claim Adjusting for a fee | _____ % |
| Third Party Administration | _____ % |
| Consulting for a fee | _____ % |
| Financial Planning for a fee | _____ % |
| Marketing for others for a fee | _____ % |
| Premium Financing for agency Insureds | _____ % |
| Premium Financing for non-agency Insureds | _____ % |
| Real Estate Sales | _____ % |
| Real Estate Appraisals/Management | _____ % |
| Safety or Loss Control Engineering for a fee | _____ % |
| Mutual Funds Sales | _____ % |
| Other (Specify) | _____ % |
| MUST TOTAL | 100% |

19.  a.   Other than any authority any of You may have to negotiate and/or place reinsurance in Your capacity as a Managing General Agent, are any of You currently involved, or have any of You within the past three years been involved in the formation, management, administration or placement of insurance for or in any of the following:

| | | | |
|---|---|---|---|
| Self-insured trusts or multiple employer trusts | _____ YES | x | NO |
| Insurance pools | _____ YES | x | NO |
| Risk retention groups or purchasing groups | _____ YES | x | NO |
| Health maintenance organizations or preferred provider organizations | _____ YES | | NO |
| Any other self-insured risk assuming entities | _____ YES | x | NO |

b.   Are any of You currently involved, or have any of You within the past three years been involved with the sale, placement or negotiation of specific and/or aggregate stop loss insurance or any reinsurance ? _____YES __x__ NO

If either a. or b. are answered "YES", provide complete details. _____

20.   Have any of You assumed liability of others under any contract or agreement (i.e., service contracts, brokerage agreements, etc.) other than insurance company appointments, Managing General Agent or Underwriting Manager contracts? _____ YES __x__ NO

If "YES", provide a copy of each such contract.

1.   Provide information on Your staff:

| | Full Time | Part Time |
|---|---|---|
| a.   Total number | 17 | |
| b.   Number hired within the past twelve months | 10 | 1 |
| c.   Number terminated, retired, or resigned within the past twelve months | 4 | |

We moved our offices from Pleasanton CA to Stockton, CA in April, 2000. Some staff made the move with us and we added new positions.

© 1995 E & O Professionals

Page 012

22. Provide the following for each principal & the First Named Insured:

| Name | Title | Total Years — Insurance Experience | Years in Present Position |
|------|-------|-----------------------------------|---------------------------|
| Martin F Sullivan | CEO | 19 | 1 |
| Fred Godinez | President | 10 | 1 |
| | | | |
| | | | |

23. Indicate professional designations or association memberships held by any of You.

```
_____ IIAA      _X_ AAMGA     _____ CIC      _____ PIA     _X_ NAPSLO    _____ NSSTA
_____ CPCU      _____ CLU      _____ NALU     _____ ChFP    _____ NAIW    _X_ Other (Specify) CIWA
```

24. Have any of You attended any E & O loss prevention seminars within the past two years?   _____ YES   _X_ NO

25. Please indicate the percentage of agency business which is company direct billed.  _0_ %

26. Please answer the following questions regarding office procedures:

|  |  | YES | NO | N/A |
|--|--|-----|-----|-----|
| a. | Is all incoming mail date stamped? | X | | |
| b. | Are all binders confirmed in writing? | X | | |
| c. | Do You issue binders for periods longer than 60 days? | | X | |
| d. | Do You maintain a diary log? | X | | |
| e. | Is there a procedure for documenting all telephone conversations regarding coverage matters relating to Your current and prospective clients? | X | | |
| f. | Are procedures in place to notify certificate holders, mortgagees, regulatory agencies, etc., of cancellations or material changes in coverage? | X | | |
| g. | Do You have a diary suspense system in place to track policy and binder expirations, etc.? | X | | |
| h. | Do You have a written procedure manual for policy issuance? | X | | |
| i. | Do You utilize an office procedures manual? | X | | |
| j. | Do You have any internal procedures to check the financial condition of the insurance companies or other insurance sources with which business is or will be placed? | X | | |
| k. | Is there a uniform system of file organization? | X | | |
| l. | Is there a system in use for file closeout? | X | | |
| m. | Do You notify the carriers in writing the same day as You make a request to bind? | X | | |
| n. | Do You provide Your clients with written confirmation of binding within 24 hours? | X | | |
| o. | Do You file surplus lines tax affidavits? | X | | |
| p. | Do You utilize a pend system to obtain audits on adjustable risks? | X | | |
| q. | Do You have a procedure for uncollectable audits? | X | | |
| r. | Do You forward cancellation requests to carriers within 24 hours of receipt? | X | | |
| s. | Do You utilize an automated processing system? | X | | |
| t. | Have You updated Your automated processing system within the past five years? | X | | |
| u. | Do You perform internal audits on a regular basis (at least once a year) on Your underwriting and policy files? | X | | |

27. a. During the past five years, have any of You been censured, fined, had any license suspended or revoked, or otherwise disciplined by any insurance regulatory authority?  _____ YES   _X_ NO

b. During the past five years, have any of You been investigated, censured, fined and/or cited by any regulatory authority other than an insurance regulatory authority?  _____ YES   _X_ NO

If a. or b. are answered "YES", provide complete details: _____

28. Do any of You have audited financial statements?  _____ YES   _X_ NO
If "YES", please attach a copy of Your most recent audited financial statements.

29. Please attach a completed premium indication/quote form and a completed binder form used by Your operation.

30. Have any claims, suits or proceedings been made during the past five years against any of You?  _X_ YES   _____ NO

"YES", complete Supplement VI, Prior Claims Supplement, for each closed claim when claim expenses (including defense costs), \nages or loss exceeded $5,000 and for each open claim.

Note:   The policy for which You are applying, if issued, will not insure any claims, suits or proceedings made against any of You before the inception Date of the policy or any subsequent claims, suits or proceedings arising therefrom.

© 1996 E & O Professionals

31. Are any of You aware of any actual or alleged act, circumstance, situation or error or omission which may reasonably be expected to result in a claim against any of You?  _____ YES  __X__ NO   If "YES", explain in an attachment.

   · Note:   The policy for which You are applying, if issued, will not insure any claims that can reasonably be expected to arise from any actual or alleged act, circumstance, situation, error or omission known to any of You before the inception Date of the policy.

32. During the past five years, has any application for Errors and Omissions insurance made on behalf of any of You been declined or has any such insurance been cancelled or refused renewal?  X  YES  _____ NO   (Not applicable in Missouri.)

   If "YES", provide details, including reason given for declination, cancellation or nonrenewal.  _____
   see May 15, 1998

33. a.   Provide the following information for Errors and Omissions insurance carried during the past five years:

| Company | Limit | Deductible | Premium | Policy Period Inception/Expiration |
|---|---|---|---|---|
| National Casualty Co | 5,000,000 | 10,000 | 15,461 00 | 08/17/99 to 08/17/01 |
| Illinois Union | 1,000,000 | 10,000 | 9,258 | 08/17/98 to 08/17/99 |
| Illinois Union | 1,000,000 | 10,000 | 8,461 | 08/17/97 to 08/17/98 |
| Shand Morahan | 1,000,000 | 10,000 | 10,500 | 08/17/96 to 08/17/97 |
| | | | | |

   b.   If You have not maintained continuous errors and omissions insurance for the past five years, provide the reason(s) for and the dates of any gap(s) in coverage  _____

REPRESENTATIONS:   BY SIGNING THIS APPLICATION YOU AGREE THAT:

   A.   The application and attachments, and the statements and answers given therein are: (i) accurate and complete; (ii) representations You made to Us on behalf of all persons and entities proposed to be covered; (iii) a material inducement to Us to provide a proposal for insurance and any policy that We issue is issued on reliance upon these representations; and (iv) attached to and form a part of the policy.
   B.   You must immediately report to Us in writing any material change in Your operations, conditions, or answers provided in this application that may occur or are discovered after the date of the application and before the effective date of any policy, if issued. On receipt of any such written notice We have the right to modify or withdraw any proposal for insurance We have offered.

WARNING

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND IN NEW YORK SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION.

Before signing this application, have You remembered to:
   a.   answer every question? .................................................................   _x__ YES  _____ NO
   b.   review every answer for accuracy? ...............................................   X  YES  _____ NO
   c.   include attachments as required to provide complete information? ....   X  YES  _____ NO
   d.   include audited financial statements, if available? .......................   x  YES  _____ NO
   e.   include sample copies of completed premium indications/quotes and binders? ...   YES  _____ NO

Sept 15 2000
Date of Application

Sovereign General Insurance
Name of Surplus Lines Licensee

OA 99974
Surplus Lines license number

Martin F. Sullivan
Your Signature

Martin F. Sullivan
Print or Type Your Name

CEO
Your Title

Note:   Both Surplus Lines Licensee and Surplus Lines license number must be provided

Note:   Must be signed by an authorized representative that is an active owner, partner or executive officer of the First Named Insured.

© 1995 E & O Professionals

Page 5

014

SUPPLEMENT IV - BUSINESS PROFILE
Wholesale... ...nderwriting Manager and Managing G....ral Agent
Errors and Omissions Liability Claims Made Policy Application

Provide a breakdown of total new and renewal business written by any of You in the last twelve months as follows. The figures indicated for .ual premium volume or commission income should include all premium or commission generated from all business placed as an ..nt. broker, wholesaler or MGA/Underwriting Manager.

| | | Annual Premium Volume | % Placed as Agent/Broker | % Placed as Wholesaler | % Placed as MGA/Underwriting Manager |
|---|---|---|---|---|---|
| A. | PROPERTY AND CASUALTY PERSONAL LINES: | | | | |
| | Automobile - Standard | | | | |
| | Automobile - Nonstandard | | | | |
| | Dwelling | | | | |
| | All Other (specify) | | | | |
| | TOTAL PERSONAL LINES: | | | | |
| B. | PROPERTY AND CASUALTY COMMERCIAL LINES: | | | | |
| | Assigned Risk. Government. Pools, Fair Plans. | | | | |
| | Aviation | | | | |
| | Bonds | | | | |
| | Directors & Officers | | | | |
| | Environmental Impairment | | | | |
| | General Property/Casualty | 300,000 | | | 100% |
| | Inland Marine | 4,000,000 | | | 100% |
| | Long or Intermediate Haul | 1,000,000 | | | 100% |
| | Trucking  (local) | 3,300,000 | | | 100% |
| | Medical Malpractice | | | | |
| | Nuclear - related Energy | | | | |
| | Professional Liability (excluding medical malpractice) | | | | |
| | Wet Marine | | | | |
| | Workers Compensation | | | | |
| | All Other (Specify) auto phys dam | 4,000,000 | | | 100% |
| | TOTAL COMMERCIAL LINES: | 14,250,000 | | | |

Note: Life, accident and health annual commission income should include total commissions, not net commissions after a split with other producers.

| | | Annual Commission Income | % Placed as Agent/Broker | % Placed as Wholesaler | % Placed as MGA/Underwriting Mgr. |
|---|---|---|---|---|---|
| C. | LIFE, ACCIDENT & HEALTH LINES: | | | | |
| | Individual Life | | | | |
| | Group Life | | | | |
| | Individual A&H | | | | |
| | Group A&H | | | | |
| | Pension Plan(s) | | | | |
| | Annuities | | | | |
| | All Other (specify) | | | | |
| | TOTAL LIFE, ACCIDENT AND HEALTH COMMISSIONS: | | | | |

THIS BUSINESS PROFILE SUPPLEMENT IS ATTACHED TO AND FORMS A PART OF THE WHOLESALER, UNDERWRITING MANAGER AND MANAGING GENERAL AGENT ERRORS AND OMISSIONS LIABILITY CLAIMS MADE POLICY APPLICATION AND/OR RENEWAL APPLICATION. IT IS SUBJECT TO THE SAME PROVISIONS CONCERNING REPRESENTATIONS MADE AS IN THE BASIC APPLICATION AND/OR RENEWAL APPLICATION.

Sept 25 2000
_____
Date of Application

Chief Executive Officer
_____
Your Title

_____
Your Signature

MARTIN F. Sullivan
_____
Print or Type Your Name

Note: Must be signed by an authorized representative that is an active owner, partner or executive officer of the First Named Insured.
I3-APP (6-97)

© 1998 E & O Professionals

015

# SUPPLEMENT VI

## PRIOR CLAIMS SUPPLEMENT

EXPRESS MAIL

Wholesaler, Underwriting Manager and Managing General Agent
Errors and Omissions Liability
Claims Made Policy Application

OCT 11 2000

Media Professional Inc.

Note:  A separate supplement should be completed for each closed claim when claim expenses (including defense costs), damage or loss exceeded $5,000 and for each open claim experienced in the last five years.

1. First Named Insured:  _____ no such claims _____

2. Provide:

   a. name of claimant _____
   b. date of alleged error _____
   c. date reported to E&O Carrier _____
   d. name of E&O Carrier _____

3. Is the claim: _____ Open    _____ Closed

   a. If closed, indicate:
      The total amount paid for damages or loss                              $ _____
      The total amount of claim expenses/defense costs in excess of the deductible   $ _____

   b. If open, indicate:
      The total amount paid for damages or loss                              $ _____
      The total amount of claim expenses/defense costs in excess of the deductible   $ _____
      Details of the current status: _____

      _____
      _____

4. Provide a description of the claim, the type of coverage involved, the alleged act, error or omission and the event that led to the claim:

   _____
   _____
   _____

5. What loss prevention measures, if applicable, have been taken to prevent a similar claim from recurring? _____

   _____

Note:  The policy for which You are applying, if issued, will not insure any claims, suits or proceedings made against any of You before the Inception Date of the policy or any subsequent claims, suits or proceedings arising therefrom.

THIS PRIOR CLAIMS SUPPLEMENT IS ATTACHED TO AND FORMS A PART OF THE WHOLESALER, UNDERWRITING MANAGER AND MANAGING GENERAL AGENT ERRORS AND OMISSIONS LIABILITY CLAIMS MADE POLICY APPLICATION AND/OR RENEWAL APPLICATION. IT IS, SUBJECT TO THE SAME PROVISIONS CONCERNING REPRESENTATIONS MADE AS IN THE BASIC APPLICATION AND/OR RENEWAL APPLICATION.

_Sept 25 2000_
Date of Application

_Martin F. Sullivan_
Your Signature

Martin F. Sullivan
Print or Type Your Name

CEO
Your Title

Note:  Must be signed by an authorized representative that is an active owner, partner or executive officer of the First Named

THS-APP [7-83]                              © 1993 E & O Professionals                              016

SCOTTSDALE INSURANCE COMPANY WHOLESALER, UNDERWRITING MANAGER
AND MANAGING GENERAL AGENT ERRORS AND OMISSIONS LIABILITY CLAIMS MADE POLICY
CLAIM EXPENSES WITHIN THE LIMIT

## PART 2. REFERENCE TO POLICY PROVISIONS

YOUR POLICY INCLUDES THE FOLLOWING
PARTS:                                     Page

PART 1. Information  Page......................... 1
PART 2. Reference to Policy Provisions....... 2
PART 3. Notices.......................................... 2
PART 4. Introduction.................................... 2
PART 5. Insuring Agreements & Exclusions..2
PART 6. Definitions Used in This Policy....... 6
PART 7. General  Conditions........................7
PART 8. Endorsements (when required)......10
PART 9. A Copy of the Signed Application
or Renewal Application.............................10

ALL OF THESE PARTS MUST BE INCLUDED
TO MAKE A COMPLETE POLICY.

## PART 3. NOTICES

### A. Claims Made Policy

This insurance coverage is on a claims made
basis. Coverage applies only to those Claims
that are first made during the Policy Period
and any Extended Reporting Period.

### B. Awareness

Various provisions in this policy restrict coverage.
Read the entire policy carefully to determine
Your rights and duties, and what is and is not
covered. We will not pay sums or perform acts
or services unless explicitly provided for in this
policy.

### C. Endorsement

If any policy provision is changed by
endorsement, any reference to that policy
provision refers to that provision as it has been
changed by endorsement.

## PART 4. INTRODUCTION

The words We, Us, and Our refer to the Insurance
Company named on the Information Page.

The First Named Insured is the Named Insured
stated in Item 1. on the Information Page.

The words Named Insured(s) refer only to the First
Named Insured stated in Item 1. on the Information
Page and other Named Insured(s) listed in Item 2.

on the Information Page.

The words You and Your refer individually and
collectively to:

1. The Named Insured(s) stated in Items 1. and
   2. on the Information Page;
2. The past or present stockholders of a Named
   Insured for their liability as stockholders;
3. The present partners, officers, members of the
   board of directors and employees of a Named
   Insured, but only for Wrongful Acts within the
   scope of their duties in such capacity for the
   Named Insured;
4. The former partners, officers, members of the
   board of directors and employees of a Named
   Insured, but only for Wrongful Acts both:
   a. Within the scope of their duties for the
      Named Insured; and
   b. Made while they were the Named Insured's
      partner, officer, member of the board of
      directors or employee;
5. Your legal representative, in the event of death,
   incompetency, insolvency or bankruptcy of any
   of You, but only for Wrongful Acts within the
   scope of their duties for a Named Insured; and
6. Any solicitor, sub-agent, sub-broker or
   sub-producer of a Named Insured if specifically
   listed by endorsement, but only for Wrongful
   Acts with respect to insurance placed through
   the facilities of the Named Insured.

Other words or phrases that are bold-faced have
special meaning. Refer to PART 6.

## PART 5. INSURING AGREEMENTS AND
EXCLUSIONS

### A. What We Insure

1. **Payments**

   As to each Claim, We will pay on Your behalf
   those Damages or Claim Expenses in excess
   of the Deductible and within the Per Claim
   Limit of Insurance stated in Item 4.a. on the
   Information Page that You become legally
   obligated to pay as Damages or Claim
   Expenses as a result of a Wrongful Act
   provided that the Aggregate Limit of Insurance
   stated in Item 4.b. on the Information Page has
   not been exhausted by the payment of
   Damages or Claim Expenses.

## 2. Defense

We will have the right and duty to appoint any attorney and defend a covered Claim, even if the allegations are groundless, false or fraudulent. However, We may, at Our discretion, investigate a Claim and, except as provided in PART 7. E., settle a covered Claim.

## B. What We Do Not Insure - Exclusions

1. We are not obligated to pay Damages or Claim Expenses or defend Claims for or arising directly or indirectly out of:

   a. Any judgment or final adjudication by a court, jury or arbitrator establishing that a Wrongful Act was dishonest, fraudulent, criminal, malicious, or was committed while knowing it was wrongful. However, We will defend such a Claim until a judgment or other final adjudication by a court, jury or arbitrator establishes such conduct. We will have the right to seek reimbursement from any of You for any Claim Expenses paid to defend any Claim that such a judgment or final adjudication finds to have involved conduct that was dishonest, fraudulent, criminal, malicious, or committed while knowing it was wrongful. This exclusion shall not apply to any of You who:
      (1) Did not personally commit, participate or acquiesce in such Wrongful Act; and
      (2) Did not remain passive after having personal knowledge of such Wrongful Act; and
      (3) Notified Us as soon as any of You became aware of such Wrongful Act;

   b. Bodily Injury or Property Damage caused by any of You;

   c. Wrongful Acts or actual or alleged circumstances or situations which may reasonably be expected to result in a Claim known by any of You at the Inception Date of the earliest policy or policies We issued which provide uninterrupted coverage;

   d. Facts or circumstances alleged in any matter which prior to the Inception Date of this policy has been the subject of notice to Us or any insurer of any:
      (1) Claim;
      (2) Threat of Claim; or
      (3) Wrongful Act or actual or alleged circumstance or situation which may reasonably be expected to result in a Claim;

   e. Notarization, certification or acknowledgment by a Notary Public of a

signature without the physical appearance and signature before such Notary Public by the person who was or claimed to be the person signing such instrument;

   f. Activities of any of You in regard to any "employee pension benefit plan" or "employee welfare benefit plan", as those terms are defined in the Employee Retirement Income Security Act of 1974, as amended;

   g. Nuclear reaction, radiation or contamination, regardless of cause;

   h. Liability assumed by any of You under any contract or agreement. This exclusion does not apply to liability You would have incurred in the absence of such contract or agreement;

   i. The failure or alleged failure to effect and/or maintain in effect any treaty reinsurance;

   j. Misappropriation of advertising ideas or style of doing business;

   k. Infringement of tradename, trademark, trade dress, service mark or service name, copyright, title or slogan;

   l. The ownership, management or operation of any insurance company or surety company or any other insurer or corporate surety of any kind;

   m. Violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Section 1911, et seq. its amendments, or any similar state or local statute;

   n. Bad faith or unfair dealing or any statutory or common law unfair claim settlement act or practice in the handling of any claim or obligation arising out of or under any insurance contract or from any benefit plan;

   o. Failure to file or any error in filing any insurance related regulatory filing;

   p. The insolvency, bankruptcy, receivership, rehabilitation or liquidation of any Non-Rated or Low-Rated Non-Admitted Risk Assuming Entity, or the inability or failure of any Non-Rated or Low-Rated Non-Admitted Risk Assuming Entity to meet all or part of any legal or financial obligation;

   q. The actual or threatened discharge, dispersal or release of any Pollutant; or the creation of any injurious condition involving any Pollutant; or the existence of any Pollutant; on any property; or the cleanup, removal, testing, monitoring, containment, treatment, detoxification or neutralization of any Pollutant. This exclusion is effective whether or not the pollution was sudden, accidental, gradual, intended, expected or preventable or whether or not any of You caused or contributed to the pollution;

3

© 1995 E & O Professionals

16B

r. The unauthorized use of trade secrets or confidential or proprietary information;

s. Disputes regarding marketing, proprietary, ownership or other rights to any insurance program or insurance book of business;

t. Unfair competition, restraint of trade, or any other violation of anti-trust laws.

2. We are not obligated to pay Damages or Claim Expenses or defend Claims made by:

a. Any enterprise:
   (1) That any of You directly or indirectly, in whole or in part, own, control, operate or manage; or
   (2) That is a parent, affiliate, subsidiary or sister company of any of You;

b. Any enterprise directly or indirectly controlled, operated or managed by an enterprise described in PART 5.B.2.a. above;

c. Any of You;

d. Any present, former or prospective partners, officers, members of the board of directors, shareholders, employees, or employers of any of You, when the Claim is in any way related to their capacity as such;

e. Any independent contractors who solicit or solicited business on Your behalf; or

f. Any person or organization for:
   (1) Collection, payment or return of premiums, taxes or commissions; or
   (2) Any funds collected or held or that should have been collected or held on behalf of another party;

g. Any insurer or its successors and assigns arising out of the Insurance Services for which any of You were acting in the capacity as a Managing General Agent or Underwriting Manager.

C. Where and When We Insure

1. Where We Insure

This policy applies to a Wrongful Act commited anywhere in the world provided that the Claim is first brought in the United States of America (including its territories and possessions), Puerto Rico or Canada.

2. When We Insure

a. Claims First Made

This policy applies when a written Claim is first made against any of You during the Policy Period or during any Extended Reporting Period.

A Claim is first made against any of You when a written Claim is first received by any of You.

b. Reported Wrongful Acts

We will cover a written Claim first made against any of You after the end of the Policy Period but only if all of the following conditions are met:
   (1) The Wrongful Act is committed prior to the end of the Policy Period;
   (2) We receive written notice from You of the Wrongful Act during the Policy Period; and
   (3) The notice must include all of the following information:
      (a) The names of those persons or organizations involved in the Wrongful Act;
      (b) The specific person or organization likely to make the Claim;
      (c) A description of the time, place and nature of the Wrongful Act; and
      (d) A description of the potential Damages.

A Claim first made after the end of the Policy Period and arising from a reported Wrongful Act will be subject to the provisions of the policy in effect on the date We receive the written notice of the Wrongful Act.

c. Extended Reporting Periods

This section describes the various Extended Reporting Period(s) that may apply. You must be in full compliance with the terms and conditions of this policy before any Extended Reporting Period will apply.

This PART 5.C.2.c. should be read in its entirety as various paragraphs contain terms and conditions that may apply to any Extended Reporting Period.

(1) Basic Extended Reporting Period

If this policy is cancelled or nonrenewed for any reason other than nonpayment of Premium, a Basic Extended Reporting Period is automatically provided without additional charge. The Basic Extended Reporting Period begins on the day the Policy Period ends and lasts sixty (60) days. The Basic Extended Reporting Period does not apply to Claims covered under any subsequent policy.

4

© 1996 S & O Professional

16C

(2) Supplemental Extended Reporting Period

During the Basic Extended Reporting Period, the First Named Insured may purchase a Supplemental Extended Reporting Period from Us.

(a) If the policy is cancelled or nonrenewed, We will provide, for the additional premium stated in (b) below, a Supplemental Extended Reporting Period for one of the terms stated below upon written request by the First Named Insured.

(b) The premiums for the various optional Supplemental Extended Reporting Period terms shall be equal to the percentage shown below of the annual premium:
(i)   85% for 12 months
(ii)  105% for 24 months
(iii) 135% for 36 months
(iv)  160% for 48 months
(v)   185% for 60 months

(3) Conditions Applicable to the Supplemental Extended Reporting Period

(a) We must receive the First Named Insured's written request and applicable premium for the Supplemental Extended Reporting Period within 60 days after the end of the Policy Period.

(b) In addition, the First Named Insured must also include payment of all premium and Deductible amounts owed to Us within 60 days after the end of the Policy Period.

(c) On actual physical receipt and acceptance by Us of the request and additional premium, We will issue an endorsement showing the term of the Supplemental Extended Reporting Period purchased.

(d) The option to purchase the Supplemental Extended Reporting Period shall lapse if the First Named Insured fails to: (i) provide timely written notice of their intent to purchase; (ii) timely pay the premium for the applicable Supplemental Extended Reporting Period; or (iii) pay all other premiums and Deductible amounts due Us within the time periods specified above.

(e) The provisions and conditions of the policy under which the Supplemental Extended Reporting Period is being offered for purchase shall apply.

(4) Conditions applicable to all Extended Reporting Periods

(a) We will cover a written Claim that is first made during any of the Extended Reporting Periods only if the Wrongful Act is committed prior to the end of the Policy Period. A written Claim that is first made during an Extended Reporting Period will be deemed to have been made on the last day of the Policy Period. The provisions of the policy in effect on the last day of the Policy Period will apply.

(b) The Extended Reporting Periods do not reinstate or increase the Per Claim or Aggregate Limits of Insurance.

(c) The Extended Reporting Periods do not extend the Policy Period or change the scope of coverage provided.

(d) Once in effect, a Supplemental Extended Reporting Period may not be cancelled.

d. Multiple Claims

All Claims arising from the same Wrongful Act or Interrelated Wrongful Acts will be deemed to have been made on the earlier of the following dates:
(1) The date the first of those written Claims involving the same Wrongful Act or a Wrongful Act in a series of Interrelated Wrongful Acts is first made against any of You; or
(2) The first date We receive Your written notice as described in PART 5.C.2.b. of the same Wrongful Act or a Wrongful Act in a series of Interrelated Wrongful Acts.
The provisions of the policy in effect on that date will apply.

D. Limit of Insurance, Deductible and Reimbursement

1. Limit of Insurance

a. The Per Claim Limit of Insurance stated in Item 4.a. on the Information Page is the most We will pay for Damages and Claim Expenses for any one Claim made during the Policy Period and any Extended Reporting Periods combined, no matter how many:
(1) Of You this policy covers;
(2) Persons or organizations made Claims; or

6

© 1996 E & O Professionals

16D

(3) Wrongful Acts are committed.

However, the Per Claim Limit of Insurance will be less than this amount if the First Named Insured refuses to consent to a settlement recommended by Us. See PART 7.E. Consent to Settle for the limit that would apply.

b. The Aggregate Limit of Insurance stated in Item 4.b. on the Information Page is the most We will pay for Damages and Claim Expenses for the total of all Claims made during the Policy Period and any Extended Reporting Periods combined, no matter how many:

(1) Of You this policy covers;
(2) Claims are made;
(3) Persons or organizations make Claims; or
(4) Wrongful Acts are committed.

c. All Claims arising out of the same Wrongful Act or Interrelated Wrongful Acts of any of You shall be considered one Claim.

**2. Deductible**

A separate Deductible applies to each Claim. The Deductible applies to Damages and Claim Expenses combined, and Our obligation to pay Damages and Claim Expenses applies only to the amount of Damages and Claim Expenses in excess of the Deductible. The applicable Per Claim or Aggregate Limits of Insurance will not be reduced by the application of the Deductible. The amount of Your Deductible is stated in Item 5. on the Information Page as applicable to each Claim.

**3. Reimbursement**

If, at Our option, We have paid any amounts for:

a. Damages in excess of the applicable Per Claim or Aggregate Limit of Insurance;
b. Claim Expenses after the applicable Per Claim or Aggregate Limit of Insurance has been exhausted or Claim Expenses incurred to defend a Wrongful Act that a judgment or other final adjudication established to be dishonest, fraudulent, criminal, malicious or committed while knowing it was wrongful; or
c. Part or all of any Deductible,

then the First Named Insured must reimburse such amounts to Us within sixty (60) days of Our request for reimbursement for the amounts that We have paid.

**PART 6. DEFINITIONS USED IN THIS POLICY**

A. "Application or Renewal Application" means all of the following:

1. The Wholesaler, Underwriting Manager and Managing General Agent Errors and Omissions Liability Policy Application signed by a Named Insured;
2. The Wholesaler, Underwriting Manager and Managing General Agent Errors and Omissions Liability Policy Renewal Application signed by a Named Insured, if this is a renewal of a policy issued by Us; and
3. All Application Supplements and attachments to the Application or Renewal Application and any other information furnished to Us for the purpose of applying for the insurance. All such attachments and information will be kept on file by Us and deemed attached to the policy as if physically attached to it.

B. "Bodily Injury" means physical injury, sickness or disease sustained by a person, including death resulting from any of these at any time. Bodily Injury also includes disability, mental anguish, mental injury, shock or fright regardless of whether it results in or from physical injury, sickness, disease or death.

C. "Claim" means a demand or assertion of a legal right seeking Damages made against any of You. A Claim includes an arbitration proceeding to which any of You is required to submit or to which any of You has submitted with Our consent.

D. "Claim Expenses" means expenses incurred and paid by Us or by You with Our consent in the investigation, adjustment, negotiation, arbitration, mediation and defense of covered Claims. Claim Expenses include:

1. Expenses We incur, but not including salaries of Our claims staff;
2. Reasonable attorneys' fees;
3. Costs taxed against You in any suit defended by Us;
4. Prejudgment interest and interest on the full amount of any judgment that accrues after entry of the judgment and before We have paid, offered to pay or deposited in court the part of the judgment that is covered and within the applicable Per Claim or Aggregate Limit of Insurance. However, the maximum portion of prejudgment or post judgment interest We will be liable for under this policy shall be no greater than the portion the Damages

© 1995 E & O Professionals

16E

covered by this policy on which such interest is assessed bears to the total Damages for the Claim on which such interest is assessed;

5. The cost of appeal bonds or bonds to release attachments, but only for Our pro rata share when the bond amounts have limits greater than the Per Claim Limit of Insurance. We do not have to apply for or furnish these bonds; and

6. Reasonable expenses incurred by You at Our request other than:

   a. Loss of earnings; and

   b. Salaries or other compensation paid to Your officers or employees.

E. "Damages" means money judgment, award or settlement, including compensatory, punitive or exemplary damages, except those for which insurance is prohibited by law.

Damages does not include fines, penalties or multiple damages. Damages does not include any form of non-money judgments including, but not limited to, specific performance or injunctive relief.

F. "Deductible" means the amount stated in Item 5. on the Information Page as applicable to each Claim and subject to the provisions of PART 5.D.2. of the policy.

G. "Insurance Services" means services any of You perform for others as a or an:

   1. Insurance agent,
   2. insurance broker,
   3. Insurance general agent,
   4. Surplus lines insurance broker,
   5. Insurance Managing General Agent,
   6. Insurance Underwriting Manager,
   7. Insurance consultant,
   8. Employee insurance benefits counselor,
   9. Estate insurance planner,
   10. Insurance claims administrator,
   11. Insurance appraiser,
   12. Notary public, or
   13. Board member of a not-for-profit insurance professional association.

H. "Interrelated Wrongful Acts" means Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction or any series of facts, circumstances, situations, events or transactions.

I. Non-Rated or Low-Rated Non-Admitted Risk Assuming Entity means any

insurance company, self-insured trust, group insurance trust or other risk assuming entity that at the most recent inception or renewal date of the insurance policy, bond or other evidence of insurance issued to Your client by that entity:

1. Was not admitted by the appropriate state regulatory body or official to do business in the state in which Your client was located; and

2. Was assigned a financial size category of III or below or a rating classification of 8 or below or "NR" or is non-rated by the A.M. Best Key Rating Guide.

J. "Policy Period" means the period of time stated in Item 3. on the Information Page, or any shorter period resulting from policy cancellation.

K. "Pollutant" means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to:

1. Smoke, vapor, soot, fumes, acid, alkalis, chemicals, asbestos;

2. Hazardous, toxic or radioactive matter or nuclear radiation;

3. Waste, which includes material to be recycled, reconditioned or reclaimed; or

4. Any other pollutant as defined by applicable federal, state or local statutes, regulations, rulings or ordinances.

L. "Property Damage" means:

1. Physical injury to tangible property, including all resulting loss of use of that property; or

2. Loss of use of tangible property that is not physically injured.

M. "Wrongful Act" means an actual or alleged:

1. Negligent act, error or omission; or

2. Libel, slander or invasion of privacy,

by any of You or any person or organization for whom You are legally liable in the performance of Insurance Services for or on behalf of a Named Insured.

PART 7.   GENERAL CONDITIONS
These conditions apply to the entire policy.

A. Special Rights and Duties of the First Named Insured

The First Named Insured is responsible for the payment of all premiums and Deductibles.

7

© 1995 G & G Professionals

16F

The First Named Insured has exclusive authority to act on behalf of all of You with respect to matters relating to this policy, including:

1. Giving and receiving notice of cancellation and nonrenewal;
2. Receiving funds;
3. Agreeing to any changes to this policy;
4. Consenting to any settlement under PART 7.E.; and
5. Purchasing the Optional Supplemental Extended Reporting Period coverage.

**B.   Mergers and Acquisitions**

In the event of merger, consolidation, amalgamation or acquisition between any Named Insured and any other insurance agent, broker, agency, or other insurance entity, the First Named Insured shall notify Us of the change prior to the date of such changes.

This policy shall not provide coverage for:
1. Any newly created entity;
2. Newly merged, consolidated or amalgamated entity; or
3. Any entity, business or operation purchased;

until such entity, business or operation has been specifically accepted for coverage by written endorsement issued by Us and made a part of this policy.   If an endorsement is added, the First Named Insured shall promptly pay any additional premium which may become due.

**C.   Changes in Operations, Carriers, Additions of New Programs**

In the event of:
1. A change in the carrier on any program or business on whose behalf You are acting as an Underwriting Manager or Managing General Agent;
2. A change in the relationship with any carrier for which You are currently acting as an Underwriting Manager or Managing General Agent which expands the lines of insurance, policy limits, claim settlement authority or underwriting authority; or
3. The creation of any new program, regardless of whether the new program is with a carrier currently or is in a line of insurance for which You are already acting as an Underwriting Manager or Managing General Agent; or
4. Any other material change in any of Your operations, other than a merger, consolidation, amalgamation or acquisition

as addressed in PART 7.B. above, the First Named Insured shall notify Us of the change(s) at the earlier of:
1. 60 days after the date of such change; or
2. The end of the Policy Period.

If the First Named Insured fails to inform Us of the change before the time specified above, this policy shall not provide coverage for any activity as changed or newly created.

We may adjust the coverage and/or premium in accordance with Our applicable rules, rates, rating plans, premiums and minimum premiums.

**D.   What to Do if You Have a Claim or Potential Claim**

1. If there is a Claim, Wrongful Act, or actual or alleged circumstance or situation that may reasonably be expected to result in a Claim, You must do the following:

   a. Notify Us in writing as soon as practicable. This notice must:
      (1) Be sent to Us, in care of E&O Professionals, Two Pershing Square, Suite 810, 2300 Main Street, Kansas City, Missouri 64108-2404; and
      (2) Contain details that identify You, the claimant and also any available information concerning the time, place and other details of the Wrongful Act and Claim or actual or alleged circumstance or situation;

   b. As soon as practicable send Us copies of all demands, notices, summonses or legal papers received in connection with the Claim;
   c. Authorize Us to obtain records and other information;
   d. Cooperate with and assist Us in the investigation, settlement or defense of the Claim; and
   e. Assist Us, upon Our request, in enforcing any rights of contribution or indemnity against another who may be liable to any of You.

2. None of You will, except at Your own cost, voluntarily make a payment, admit liability, assume any obligation, incur any expense or agree to participate in any arbitration or mediation proceedings without Our prior written consent.

8

© 1995 E & O Professionals

*16G*

Case 2:06-cv-02725-MCE -DAD   Document 14-2   Filed 08/10/07   Page 25 of 30

### E. Consent to Settle

We will not settle any Claim without the consent of the First Named Insured. If the First Named Insured does not consent to a settlement offer from the claimant and recommended by Us then: (i) Our liability for Damages will not exceed the amount for which the Claim could have been so settled, less the Deductible, or the applicable Per Claim and Aggregate Limits of Insurance that have not been exhausted; (ii) Our liability for Claim Expenses will not exceed the Claim Expenses incurred with Our consent up to the date of the First Named Insured's refusal to consent to settlement; and (iii) Our duty to defend shall terminate on the date of the First Named Insured's refusal to consent to the recommended settlement.

### F. Legal Action Against Us

No person or organization has a right under this policy:

1. To join Us as a party or otherwise bring Us into a suit asking for Damages from any of You; or
2. To sue Us on this policy unless all of the policy's provisions have been fully complied with.

A person or organization may sue Us to recover on an agreed settlement or on a final judgment against You; but We will not be liable for Damages and Claim Expenses that are not payable under the provisions of this policy or that are in excess of the applicable Per Claim or Aggregate Limit of Insurance. An agreed settlement means a settlement and release of liability signed by the claimant or the claimant's legal representative and approved in advance by Us.

### G. Bankruptcy

The bankruptcy, insolvency, receivership or liquidation of any of You or Your estate will not relieve Us of Our obligation under this policy as long as all policy premiums and all other amounts due Us have been paid. However, this policy will not apply to liability directly or indirectly for Damages or Claim Expenses due to such bankruptcy, insolvency, receivership or subsequent liquidation.

### H. Other Insurance

If other valid and collectible insurance is available to any of You for any Claim We cover, this policy is excess over such other insurance, except when the other insurance is purchased by any of You only to apply in excess of this policy and no other insurance exists.

### I. Transfer of Rights of Recovery Against Others to Us

You may have rights to recover all or part of any payment You or We make under this policy. If so, those rights are transferred to Us to the extent of any payment We make.

You must do nothing to impair such rights. At Our request, You will bring suit or transfer those rights to Us and help Us enforce them. Any recoveries shall be applied as follows:

1. First, to Us if We incur expenses to bring suit or otherwise exercise rights to recovery up to the amount of expenses so incurred;
2. Then, to Us up to the amount of Our payment for Damages and Claim Expenses; and
3. Then, to the First Named Insured as recovery of Deductible amounts paid as Damages and Claim Expenses.

However, We, at Our sole discretion, have the right to determine whether We will pursue any recovery under this provision.

### J. Changes in Policy Provisions

This policy contains all the agreements between Us and the First Named Insured on behalf of all of You concerning the insurance afforded by this policy. This policy's provisions can be amended or waived only by written endorsement issued by Us and made a part of this policy.

### K. Transfer of Your Rights and Duties Under the Policy

Your rights and duties under this policy may not be transferred without Our written consent.

### L. Cancellation

1. The First Named Insured may cancel this policy by mailing or delivering to Us or Our authorized representative advance written notice of cancellation.

9

© 1995 E & O Professionals

16H

2. We may cancel this policy by mailing or delivering to the First Named Insured written notice of cancellation or nonrenewal at least:

   a. 10 days before the effective date of cancellation if We cancel for nonpayment of premium or Deductible amounts; or

   b. 60 days before the effective date of cancellation if We cancel for any other reason.

We will mail or deliver Our notice to the address stated in Item 1. on the Information Page.

Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

If the policy is cancelled, We will send the First Named Insured any premium refund due. If We cancel, the refund will be pro rata. If the First Named Insured cancels, the refund, if any, will be 90% of pro rata. The cancellation will be effective even if We have not made or offered a refund.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**M.  Nonrenewal**

We may nonrenew this policy by mailing or delivering to the First Named Insured at the address stated in Item 1. on the Information Page written notice of nonrenewal at least 60 days before the Expiration Date of this policy. Proof of mailing will be sufficient proof of notice. However, the offer of renewal terms, conditions or premium different from those in effect prior to renewal does not constitute nonrenewal.

**N.  Representations**

By accepting this policy, the First Named Insured agrees on behalf of all of You:

1. The statements in the Application or Renewal Application for this policy furnished to Us are accurate and complete;
2. Those statements furnished to Us are representations a Named Insured made to Us on behalf of all of You;
3. Those representations are a material inducement to Us to issue this policy;
4. We have issued this policy in reliance upon those representations;
5. The Application or Renewal Application is part of this policy; and

6. If this policy is a renewal of a policy issued by Us, Your representations include the representations a Named Insured made in the original signed Wholesaler, Underwriting Manager and Managing General Agent Errors and Omissions Liability Policy Application, but only as of inception date of the original policy issued by Us. The representations a Named Insured makes on the Wholesaler, Underwriting Manager and Managing General Agent Errors and Omissions Liability Policy Renewal Application apply as of the inception date of the renewal policy(ies).

**PART 8. ENDORSEMENTS**

Required endorsements are attached to the back of this page.

**PART 9. A COPY OF THE SIGNED APPLICATION OR RENEWAL APPLICATION**

A copy of the signed Application or Renewal Application is attached and is part of this policy.

IN WITNESS WHEREOF, We have caused this policy to be executed and attested.

Secretary

President

16I

© 1996 C & O Professionals

**EXHIBIT 2**

LEUF LAMB GREENE & RAE

New York

Washington, D.C.

Albany

Boston

Denver

Harrisburg

Hartford

Houston

Jacksonville

Los Angeles

Newark

No. 1 MINSTER COURT
MINCING LANE
LONDON EC3R 7YL

Telephone: 020-7459 5000
Facsimile: 020-7459 5099
Lloyd's Extn: 4565
Dx: 520 London/City

020 7459 5006
dwaldron@llgm.com

Pittsburgh

Salt Lake City.

San Francisco

Paris

Brussels

Moscow

Almaty

Tashkent

Bishkek

Beijing

Riyadh

Our Ref: DW/JAL/08019.00805

20 March, 2001

Sovereign General Insurance Services Inc
6777 Embarcadero Dr
Second Floor
Stockton
California 95219
USA

By Fax and By Courier
and By Personal Service

Dear Sirs

Agreement Number:  CP9907140  Expires 1/3/2000  ("Hogg Pak 1999")
CP0007140  Expires 1/3/2001  ("Hogg Pak 2000")
CP0007301  Expires 1/1/2001  ("Large Fleet 2000")
CP0006901  Expires 1/9/2001  ("Miscible 2000")
CP9907097  Expires 1/12/2000 ("Auto PD 1999")
CP0007097  Expires 1/12/2001 ("Auto PD 2000")
                                                     (together the "Six Agreements")

We are instructed by the underwriters of the above-captioned agreements ("Underwriters").

We write with reference to the above detailed agreements. In respect of Auto PD 1999 and 2000 and Miscible 2000 (together the "Auto PD and Miscible Agreements") and, in accordance with Section 6 of the Binding Authority Agreements regulating those agreements, Underwriters (insofar as it is necessary to do so) give thirty days notice of termination, cancellation and non-renewal of each of the Auto PD and Miscible Agreements, such notice being effective from the date of this letter (and terminating on 19 April 2001).

Underwriters instruct Sovereign General Insurance Services ("Sovereign") not to write any further business under the Auto PD and Miscible Agreements or bind or attempt to bind Underwriters or take any other action during or after the thirty day notice period except as otherwise instructed.

JAMES F. JOHNSON 4TH ATTORNEY NEW YORK, PETER J. SHARP SOLICITOR ENGLAND, ALAN M. JONES SOLICITOR ENGLAND
GARAY J. PEGG SOLICITOR ENGLAND, CHARLES E.G. ASHTON SOLICITOR ENGLAND, ANTHONY J.B. RICHMOND SOLICITOR ENGLAND
1994 63. J. HALLER ATTORNEY NEW YORK, WASHINGTON, D.C., ROBERT K. DIEPLE SOLICITOR ENGLAND, NICHOLAS D. ROCHES SOLICITOR ENGLAND
TAYLOR R. BRIAGE ATTORNEY NEW YORK, DONALD L GREENE ATTORNEY NEW YORK DOUGLAS W. HAWES ATTORNEY NEW YORK
CARL D. HOBELMAN ATTORNEY CALIFORNIA, NEW YORK, WASHINGTON, D.C., RONALD D. JONES ATTORNEY NEW YORK
REGULATED BY THE LAW SOCIETY

017

Insofar as it is necessary so to do, Underwriters give notice of immediate termination, cancellation and non-renewal of Hogg Pak 1999 and 2000 and Large Fleet 2000 (together the "Hogg Pak and Large Fleet Agreements"). Consequently, Sovereign has no further authority under the Hogg Pak and Large Fleet Agreements. Sovereign must take no further action in respect of the Hogg Pak and Large Fleet Agreements except where otherwise instructed.

With respect to the Auto PD and Miscible Agreements in the usual course, in their capacity as Coverholder, it would be Sovereign's responsibility to ensure Underwriters are not committed to insurances which incept after the termination (Section 8). If an Assured is entitled to tacit or automatic renewal Sovereign would be obliged to cancel all renewals which incept after the date of termination/ cancellation/non-renewal and to provide Underwriters with a list of Assureds where tacit or automatic renewal provisions cannot be withdrawn. Sovereign are hereby instructed to provide to Underwriters, within seven days of receipt of this letter, a full detailed list of Assureds where tacit or automatic renewal requires cancellation, where tacit or automatic renewal provisions cannot be withdrawn and where there are no such Assureds confirmation that no such Assureds exist. Sovereign is instructed not to take any action with regard to the Assureds or cancellation.

In accordance with Section 7.3 of the Six Agreements Sovereign are hereby instructed to surrender to Mr Dean Hansell Esq, LeBoeuf, Lamb, Greene & MacRae, 725 South Figueroa Street, Suite 3600 Los Angeles, CA 90017-5436 all unused certificates of insurance, other documents[1], records[2] and other unused material[3] which Sovereign possesses in connection with the Six Agreements. Underwriters also request written confirmation from Sovereign, within seven days of receipt of this letter, that Sovereign have ensured that any electronic method of producing any such document is also terminated with immediate effect, and in the absence of any such electronic method that no such method did or does exist.

As you are aware, Underwriters are conducting investigations into the underwriting and claims handling activities of Sovereign. To assist in those investigations, Underwriters hereby give notice, in accordance with Section 32 of the Six Agreements, of their intention to inspect all of Sovereign's documents[1], records[2] and material[3] which are not subject to surrender in accordance with this letter. To that end Sovereign are instructed to make all their records available from 26 March 2001.

Although Underwriters enquiries are at an early stage, on the information available to date, Underwriters believe Sovereign are in breach of their obligations under at least some of the Six Agreements. The breaches by Sovereign include but are not limited to the following:

• Sovereign exceeded Gross Written Premium Limit(s); and

---

[1] (see [1] below)

[2] Record means anything in which information of any description is recorded and is not restricted to paper writings but extends to anything upon which information is recorded in a manner intelligible to the senses or capable of being made intelligible by these equipments, thus tape-recordings, microfilms, photographs, computer databases are included in this list.

[3] Includes documents provided to the coverholder under the Agreement to include certificates of insurance, cover notes, all premium, claims and accounting records and any document bearing the name, mark or reference of Underwriters, and any other record which Sovereign possesses which may be used to evidence insurance. Where documents or material exist in electronic form, or also in electronic form an electronic and hard copy must be provided.

199163

- Sovereign failed to notify Underwriters when the Gross Premium Limit(s) was/were likely to exceed 75%; and
- Sovereign failed to comply with proper claims handling procedures,

as a result Underwriters have suffered loss.   Sovereign are hereby put on notice of Underwriters intention to recover all losses arising as a result of Sovereign's actions; such claim is not limited to the breaches set out above and Underwriters reserve the right to rely on other breaches committed by Sovereign. Consequently you should notify your Professional Indemnity Insurer(s) immediately.

This letter is not a complete statement of Underwriters' rights in connection with this matter, and nothing contained in this letter shall constitute an express or implied waiver of any rights, remedies or defences of Underwriters, all of which are expressly reserved.

Please acknowledge safe receipt of this letter and by return confirm that you will comply with the instructions set out above.

Yours faithfully

David Waldron
LeBoeuf, Lamb, Greene & MacRae

199163