UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SOVEREIGN GENERAL INSURANCE
SERVICES, INC.,

       Plaintiff,

  v.

NATIONAL CASUALTY COMPANY,
DOES 1 through 10, Inclusive,

       Defendants.

No. 2:06-CV-2725-MCE-DAD

MEMORANDUM AND ORDER

----oo0oo----

Through the present action, Plaintiff Sovereign General Insurance Services, Inc. ("Sovereign") alleges that Defendant National Casualty Company ("National") breached its contractual obligations under an errors and omissions insurance policy by failing to appoint <u>Cumis</u> counsel to represent Sovereign. Jurisdiction is premised on diversity of citizenship pursuant to 28 U.S.C. § 1332.

///
///
///

1

Presently before this Court is National's Motion for Summary Judgment, or in the alternative, Partial Summary Judgment. For the reasons set forth below, that Motion will be GRANTED.[1]

**BACKGROUND**

Sovereign is licensed in California as a fire and casualty broker-agent, a surplus line broker, and a special lines surplus line broker. This licensure allows Sovereign to transact insurance on property located, or operations conducted, in California with foreign insurers that are not admitted by the California Department of Insurance to transact insurance business in this state. National is an insurance company which issued a policy of errors and omissions insurance to Sovereign with a coverage limit of $5 million. That policy was of the "wasting" or "burning limits" variety, whereby funds expended on the defense of a claim were charged against the policy limit, reducing the amount available under the policy for indemnification either by settlement or following an adjudication on the merits.

While the policy covering Sovereign was in effect, Lloyd's of London ("Lloyd's") instituted an arbitration proceeding against Sovereign in London, England, for alleged violations of Lloyd's agreements with Sovereign. Lloyd's was one of the non-admitted insurers for whom Sovereign acted as a surplus lines broker.

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

2

Subject to binding authority agreements between Sovereign and Lloyd's, Sovereign placed insurance policies with California insureds on Lloyd's behalf. On or about March 20, 2001, counsel for Lloyd's advised Sovereign that Sovereign had breached the terms of those agreements by acting in excess of its authority with respect to certain Gross Written Premium Limits, by not notifying Lloyd's in connection therewith, and by failing to comply with proper claims handling procedures. (See Exhibit 1 to the Declaration of Stan Howard in Support of Defendant's Motion).

National agreed to defend Sovereign against the claim by Lloyd's under a reservation of rights, whereby National reserved the right to later determine if it in fact was liable to Sovereign under the terms of its policy. National's reservation of rights letter, dated March 20, 2002, raised the potential of non-coverage given 1) the territorial limits of its policy, and whether or not that policy applied to a claim first brought outside the United States; and 2) whether the policy's exclusion for claims resulting from an insured's capacity as a Managing General Agent or Underwriting Manager barred coverage for Lloyd's claims. Id. at Ex. 3. The March 20, 2002 letter further advised Sovereign of its right to retain additional independent counsel, in addition to the defense provided by National, in the event of "certain conflict of interest situations. Id.

National ultimately settled Lloyd's claims against Sovereign for $1.4 million. By the time of that settlement, National had paid over $2.6 million in legal fees to Charles Russell, the London firm hired to defend the claims on Sovereign's behalf and represent it in the London arbitration proceedings.

3

The total paid by National, after factoring both defense and indemnification costs, was therefore less than Sovereign's $5 million policy limit. It is undisputed that Sovereign expressly consented to this settlement.

Before the settlement with Lloyd's was reached, Sovereign brought this action, alleging that National had failed to appoint independent counsel to represent it, as required under California law in certain circumstances where a conflict of interest is present in the representation of both the insurer and the insured. This requirement of separate counsel was principally established in the <u>San Diego Federal Credit Union v. Cumis Insurance Society, Inc</u>. case, 162 Cal. App. 3d 358 (1984). The requirement was subsequently codified in California Civil Code § 2860, and is commonly referred to as the obligation to provide "<u>Cumis</u>" counsel.

Sovereign initially hired California based Aguilar Law Offices ("Aguilar") to help secure London counsel to represent Sovereign in the English arbitration proceedings. Although National paid some of Aguilar's bills in connection with that assistance, National never paid or authorized Aguilar to handle the arbitration proceedings. To the contrary, Sovereign itself chose Charles Russell to provide its representation in England. Sovereign now claims, however, that National should nonetheless be required to pay for the legal work performed during the arbitration proceedings by Aguilar as <u>Cumis</u> counsel, despite the fact that National advised Sovereign in three separate letters, dated August 28, 2002, November 12, 2002, and April 7, 2003, respectively, that National would not pay Aguilar in addition to Charles Russell. (Def.'s Undisputed Fact No. 25).

4

1   In addition to asserting breach of National's obligation to
2  provide Cumis counsel, Sovereign's complaint also alleges breach
3  of the implied covenant of good faith and fair dealing, citing
4  its concern at the time that the claim with Lloyd's would not be
5  settled within the policy limits.  (Compl., ¶ 22).  In addition,
6  Sovereign seeks declaratory relief, asking this Court to declare
7  Sovereign's entitlement to Cumis counsel, as well as its
8  entitlement to settlement within the available limits.  Id. at
9  ¶ 26.  Finally, Sovereign requests injunctive relief, asking that
10 National be compelled to assert at arbitration that Sovereign was
11 precluded by California law from adjusting claims.  Id. at ¶ 30-
12 31, 9:8-15).

**STANDARD**

   The Federal Rules of Civil Procedure provide for summary
judgment when "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment
as a matter of law."  Fed. R. Civ. P. 56(c).  One of the
principal purposes of Rule 56 is to dispose of factually
unsupported claims or defenses.  Celotex Corp. v. Catrett, 477
U.S. 317, 325 (1986).
///
///
///
///

5

1 Rule 56 also allows a court to grant summary adjudication on
2 part of a claim or defense.  *See* Fed. R. Civ. P. 56(a) ("A party
3 seeking to recover upon a claim ... may ... move ... for a
4 summary judgment in the party's favor upon all or any part
5 thereof."); *see also* <u>Allstate Ins. Co. v. Madan</u>, 889 F. Supp.
6 374, 378-79 (C.D. Cal. 1995); <u>France Stone Co., Inc. v. Charter</u>
7 <u>Township of Monroe</u>, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

8 The standard that applies to a motion for summary
9 adjudication is the same as that which applies to a motion for
10 summary judgment.  See Fed. R. Civ. P. 56(a), 56(c); <u>Mora v.</u>
11 <u>ChemTronics</u>, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

12 In considering a motion for summary judgment, the court must
13 examine all the evidence in the light most favorable to the non-
14 moving party.  <u>U.S. v. Diebold, Inc</u>., 369 U.S. 654, 655 (1962).
15 Once the moving party meets the requirements of Rule 56
16 by showing that there is an absence of evidence to support the
17 non-moving party's case, the burden shifts to the party resisting
18 the motion, who "must set forth specific facts showing that there
19 is a genuine issue for trial."  <u>Anderson v. Liberty Lobby, Inc</u>.,
20 477 U.S. 242, 256 (1986).  Genuine factual issues must exist that
21 "can be resolved only by a finder of fact, because they may
22 reasonably be resolved in favor of either party."  <u>Id</u>. at 250.
23 In judging evidence at the summary judgment stage, the court does
24 not make credibility determinations or weigh conflicting
25 evidence.  *See* <u>T.W. Elec. v. Pacific Elec. Contractors Ass'n</u>,
26 809 F.2d 626, 630-631 (9th Cir. 1987), citing <u>Matsushita Elec.</u>
27 <u>Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).
28 ///

**ANALYSIS**

**1.   Breach of Contract - Failure to Appoint <u>Cumis</u> Counsel**

The requirement to provide <u>Cumis</u> counsel was originally set forth in <u>San Diego Navy Federal Credit Union v. Cumis Insurance Society, Inc</u>., 162 Cal. App. 3d 358 (1984). The California State Legislature subsequently codified the result in <u>Cumis</u> by enacting California Civil Code section 2860. That section states, in relevant part:

> (a) If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured ...
>
> (b) For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist. No conflict of interest shall be deemed to exist as to allegations of punitive damages or be deemed to exist solely because an insured is sued for an amount in excess of the insurance policy limits.

Subdivisions (c) through (f) apply once a conflict of interest triggers the requirement of <u>Cumis</u> counsel, and specify the qualifications of such counsel, the duty of counsel to disclose all non-privileged materials to the insurer, the method by which the insured may waive its rights under the section, and counsel's right to participate fully in the litigation. Cal. Civ. Code § 2860.

///

1    Per the statute, then, in order to trigger the obligation to
2 provide Cumis counsel, the insurer must make a reservation of
3 rights as to a coverage issue **and** the counsel first retained by
4 the insurer must be able to control the outcome of that issue.
5 Cal. Civ. Code § 2860(b).  This dual requirement has been
6 carefully prescribed.  In James 3 Corp. v. Truck Insurance
7 Exchange, 91 Cal. App. 4th 1093 (2001), the court held that "not
8 every conflict of interest triggers an obligation on the part of
9 the insurer to provide the insured with independent counsel at
10 the insurer's expense."  Id. at 1101.  "The mere fact the insurer
11 disputes coverage does not entitle the insured to Cumis counsel;
12 nor does the fact the complaint seeks punitive damages or damages
13 in excess of policy limits."  Id.  The court clarified that the
14 requirement of Cumis counsel "is not based on insurance law but
15 on the ethical duty of an attorney to avoid representing
16 conflicting interests."  Id.  (quoting Golden Eagle Ins. Co. v.
17 Foremost Ins. Co., 20 Cal. App. 4th 1372, 1394 (1993).
18    An insured has no entitlement to Cumis counsel "where the
19 coverage issue is independent of, or extrinsic to, the issues in
20 the underlying action."  Dynamic Concepts, Inc. v. Truck Ins.
21 Exchange, 61 Cal. App. 4th 999, 1006 (1998).  "A mere possibility
22 of an unspecified conflict does not require independent counsel.
23 The conflict must be significant, not merely theoretical, actual,
24 not merely potential."  Id. at 1007.
25    In the instant case, it is undisputed that National reserved
26 its rights as to whether it was in fact liable to Sovereign for
27 insurance coverage against the Lloyd's claim.
28 ///

8

It also appears from the facts that, pursuant to California Civil Code section 2860, Charles Russell qualified as the "counsel first retained" by National for defense of the claim.[2]  It is the representation provided by Charles Russell, and the circumstances surrounding that representation, that Sovereign cites as the basis for the need for independent Cumis counsel to represent their interests.  From the above, then, the issue of whether National owed Cumis counsel to Sovereign turns on whether Charles Russell could control the determination of National's obligation to Sovereign under the terms of its policy.

    The ability, or lack thereof, of Charles Russell to control the coverage issue is therefore the dispositive question surrounding Sovereign's First Cause of Action.  Arguments made by both parties that do not focus on this issue are not helpful in resolving that question.  Even if, as Sovereign contends, Charles Russell referred to National as its client, that description does not equate to control of the coverage issue.  In any event, examination of the evidence shows that the alleged support for that proposition stems from the retainer agreement itself, which was between Charles Russell and National, as the party responsible for payment of Russell's defense fees under the policy of insurance issued to Sovereign by National.

///

///

---

[2] There is much debate over whether Charles Russell, having been chosen by Sovereign and Aguilar as the firm to defend the Lloyd's claim in London, was in fact insurer-retained counsel as opposed by independent counsel selected expressly by the insured. For purposes of this Order, the Court assumes that Charles Russell was not independent Cumis counsel for Sovereign.

9

(See October 28, 2004 email from Stephen Carter to Fred Godinez, Exhibit K to Godinez Declaration in Opposition to Motion for Summary Judgment, see also Exhibit H). The same evidence goes on to support a conclusion that the Stephen Russell attorney involved in the case, Stephen Carter, was well aware of the distinction between his role as defense counsel for the insured, and National's own dispute with Sovereign as to coverage. As Mr. Carter states:

> "My firm is not involved in [the coverage] dispute, in connection with which National Casualty has retained separate attorneys. Given that it is a US law and jurisdiction policy nor do I see any prospect of our involvement in it. Our role relates to the claims brought by Lloyd's underwriters relating to the binding authorities not to any coverage issues."

Ex. K to Godinez Decl.

Other issues raised by Sovereign are similarly unavailing to establish that Charles Russell could have controlled the outcome of the coverage dispute. The allegation that National failed to sufficiently monitor the litigation costs incurred by the Russell firm has no bearing on that issue. Additionally, the bare fact that National's reservation of rights letter provided for the possibility of Cumis counsel under "certain conflict of interest situations"[3] does not mean that this particular case warranted the appointment of independent counsel.

///
///
///

---

[3] See May 3, 2002 reservation of rights letter from Sidney Hill, p. 9, attached as Exhibit 3 to the Declaration of Stan Howard filed in support of this motion.

10

On National's side, the fact that National repeatedly advised attorney Aguilar that it would not continue to pay his legal fees also does not in and of itself establish that National was not obligated to do so.

In its memorandum of points and authorities in opposition to National's Motion for Summary Judgment, Sovereign repeatedly claims that Charles Russell had a conflict of interest.[4] Sovereign contends that Charles Russell failed to provide a full defense, that it was not capable of providing a full defense, and that Aguilar was required to, and did, assist Charles Russell in the litigation.  The fact that a second set of attorneys may have been beneficial, however, does not in and of itself create a conflict of interest entitling Sovereign to Cumis counsel.  The pertinent issue is not competence, but instead whether a conflict of interest was created by any ability, on the part of Charles Russell as Sovereign's defense counsel, to also affect the outcome of Sovereign's coverage dispute with National.  The utility of any advice Aguilar was able to provide is simply not germane to whether that very narrowly defined conflict existed.

The most problematic allegation with respect to the requisite conflict lies with Sovereign's claim that Charles Russell refused to assert that Sovereign was legally prohibited from adjusting claims, and consequently could not have mismanaged claims as contended by National.

///
///

---

[4] See Plaintiff's Opposition at 1:6-7, 1:11, 2:19, 5:14.

11

1  Sovereign, however, does not allege, and has provided no evidence
2  to support, that Charles Russell, even if it did refuse to assert
3  the above described defense, was doing so to control the
4  determination of the coverage issue.  The evidence does not
5  support Sovereign's claim that Charles Russell unequivocally
6  refused to assert the defense.  The Position Summary prepared by
7  Stephen Carter simply takes a small amount of the claims handling
8  issues into account in formulating a settlement assessment, with
9  Mr. Carter going as far as saying Lloyd's had stopped short of
10 alleging that Sovereign had itself adjusted claims.  (See Godinez
11 Decl., Ex. P, ¶2.2).  That Mr. Carter was advocating some
12 consideration of that issue in formulating settlement does not
13 mean that he would not have pursued the defense that Sovereign
14 could not have managed claims had the matter actually gone to
15 arbitration.  It must be noted that National, as the insurer,
16 stood to lose at least as much as Sovereign by failing to assert
17 a valid, liability reducing defense.  Charles Russell's alleged
18 refusal to assert the defense does not support an inference of a
19 conflict of interest, and even less a conflict over the coverage
20 issue, sufficient to trigger the requirement of Cumis counsel.
21     Although Sovereign's President, Fred Godinez, claims that
22 Carter did not "respond" to suggestions posed by Godinez and
23 Aguilar concerning the invalidity of Lloyd's claims handling
24 allegations (see Godinez Decl., ¶ 18), that is not the same as an
25 outright refusal to ultimately assert the defense, and Sovereign
26 has produced no evidence whatsoever that any such refusal on
27 Carter's part ever occurred.
28 ///

12

Even if Charles Russell did refuse to entirely discount Lloyd's claims handling allegations in evaluating the case for settlement, the firm's reasons for doing so could well have been founded on any number of different considerations.  There is no evidence which suggests that Charles Russell was doing so to affect the outcome of National's coverage determination.  There similarly is no evidence that Charles Russell, in its handling of Sovereign's defense, had even the ability to color the facts upon which coverage turned.  In defending Sovereign against allegations that it had exceeded premium limits set by Lloyd's, Stephen Russell's representation could not possibly have influenced the question of whether the Lloyd's claims fell outside the territorial limits of the policy.  Neither could Charles Russell impact the question of whether claims handling falling outside the coverage of the policy had occurred– it either did or did not.

    The evidence provided by Sovereign indicates that Charles Russell was not hired to litigate the matter of National's obligation to Sovereign under the errors and omissions policy, but rather only to defend the Lloyd's claim against Sovereign. As indicated above, attorney Carter was clear on this score in stating the he saw "no prospect" of his firm's involvement in the coverage dispute.  (See October 28, 2004 email from Stephen Carter to Fred Godinez, Exhibit K to Godinez Declaration ). Moreover, Fred Godinez himself states that "it became necessary for National Casualty to obtain English counsel to defend the arbitration," and that "Charles Russell acted as the London solicitors in the London Arbitration."

13

1 | Godinez Decl., 5:3-4; 6:19.  The fact that "the Charles Russell
2 | firm utilized the services of Raul V. Aguilar to provide advice
3 | and opinions on California insurance regulatory law," Id. at
4 | 9:24-26, points toward a lack, not a presence, of a conflict of
5 | interest in the representation of Sovereign by Charles Russell.
6 |     If Aguilar performed work for or on behalf of Charles
7 | Russell, they might well look to them for payment.  But neither
8 | such assistance, nor the need for it, equates to a conflict of
9 | interest on the part of Charles Russell in their representation
10 | of both Sovereign and National, and thus does not trigger the
11 | statutory requirement for appointment of Cumis counsel.
12 |     From the facts as presented to this Court, Charles Russell
13 | was hired to resolve the claims of Lloyd's against Sovereign, and
14 | not to determine whether National was liable for Sovereign's
15 | defense.  Further, there is no allegation that Charles Russell
16 | was retained to determine whether National owed insurance
17 | coverage to Sovereign, nor is it likely that they could have been
18 | retained for that purpose or otherwise affected the outcome of
19 | that issue.  Therefore, there is no evidence of a conflict of
20 | interest regarding the representation provided by Charles Russell
21 | as to whether National would provide coverage to Sovereign, and
22 | thus no triggering of the statutory requirement of Cumis counsel.
23 |     There is an absence of evidence, then, that Charles Russell
24 | could control the outcome of the coverage issue.  Thus there is
25 | no genuine issue of any material fact regarding whether Charles
26 | Russell was involved in, or could otherwise significantly affect,
27 | any determination of whether National owed Sovereign coverage
28 | under the policy.

14

Summary adjudication in favor of National on Sovereign's First Cause of Action, for failure to appoint <u>Cumis</u> counsel, is therefore appropriate, and National's Motion will be GRANTED as to that claim.

**2.   Breach of the Implied Covenant of Good Faith and Fair Dealing**

Sovereign's claim for breach of the implied covenant is specifically premised on National's failure, as of the time of the filing of the complaint, to settle the Lloyd's claim within the $5 million policy limits. <u>See</u> Compl., ¶ 22. Subsequently, National did, in fact, settle the Lloyd's claim entirely within the coverage of the policy, therefore making that claim moot.

In opposition to National's Motion for Summary Judgment, Sovereign nonetheless attempts to restyle its breach of the implied covenant claim based on National's failure to appoint <u>Cumis</u> counsel. That attempt is improper in the first instance. Sovereign cannot rely on unpled claims in order to defeat a motion for summary judgment. <u>See, e.g.</u>, <u>Harris v. Secretary, U.S. Dept. of Veterans Affairs</u>, 126 F.3d 339, 341 (D.C. Cir. 1997). Sovereign fares no better, however, on the merits. For the reasons set forth above, National was not under an obligation to provide independent counsel to Sovereign for the defense of the Lloyd's claim. "Although an insurer's bad faith is ordinarily a question of fact to be determined by a jury by considering the evidence of motive, intent and state of mind, '[t]he question becomes one of law ... when, because there are no conflicting inferences, reasonable minds could not differ.'"

15

Chateau Chamberay Homeowners Ass'n v. Associated Intern. Ins. Co., 90 Cal. App. 4th 335, 350 (2001).  Here, there are no valid inferences supporting the argument that National acted in bad faith by failing to provide Cumis counsel.  There is also no genuine issue of any material fact regarding the reasonableness of National's actions in the settling of Lloyd's claims within the policy limits; indeed, this was a key objective or Sovereign's in initially filing this claim as stated above.  Summary adjudication of Sovereign's claim for Breach of the Implied Covenant of Good Faith and Fair Dealing is therefore proper, and National's Motion for Summary Judgment as to Second Cause of Action is accordingly GRANTED.

### 3.   Declaratory Relief and Injunctive Relief

Sovereign's Complaint, filed prior to the settlement of Lloyd's claims, seeks declaratory relief, asking this Court to declare Sovereign's entitlement to Cumis counsel, as well as injunctive relief, asserting that National must be compelled to assert the defense that Sovereign could not have mismanaged claims because it was barred by California law from adjusting claims.  Because the Court has already determined, as detailed above, that Sovereign was not entitled to Cumis counsel, declaratory relief in favor of Sovereign cannot be had.  Additionally, given that the Lloyd's claim is now settled, mandatory injunctive relief to influence a proceeding that has already concluded would also be inappropriate.
///

1  The matter is moot, and for injunctive relief to lie, there must
2  be a threat of ongoing harm which is not present here.  <u>Gafcon,</u>
3  <u>Inc. v. Ponsor & Assoc.</u>, 98 Cal. App. 4th 1388, 1403 n.6 (2002).
4      It must also be noted that Sovereign offers no specific
5  opposition to National's request for summary adjudication as to
6  its Third and Fourth Causes of Action, for declaratory and
7  injunctive relief, respectively.  Given that non-opposition as
8  well as the foregoing, National's Motion for Summary Adjudication
9  on these claims is granted.

**CONCLUSION**

For the reasons set forth above, National's Motion for Summary Judgment is granted in its entirety.  The Clerk of the Court is accordingly directed to close the file.

IT IS SO ORDERED.

Dated: February 15, 2008

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE